LEE, C.J.,
for the Court:
PROCEDURAL HISTORY
¶ 1. On May 5, 2007, seventeen-year-old Ricco Handy drowned while swimming in the pool at the Bellevue Place Apartments in Jackson, Mississippi. Ricco’s mother, Melissa Handy, filed a wrongful death suit in the Hinds County Circuit Court against the owner of Bellevue Place, A. Waddell Nejam[1] d/b/a Bellevue Apartments. Ultimately, the trial court granted summary judgment in favor of Nejam. Melissa now appeals, asserting that the trial court erred in granting summary judgment in favor of Nejam.
FACTS
¶ 2. On the afternoon of May 5, 2007, Ricco and his cousin, Courtney Handy, were visiting Craig Handy, their uncle. Craig lived at the Bellevue Place Apartments. After eating lunch, Craig took a *628 nap. Courtney stated that he asked Ricco to go down to the pool with him. Neither Courtney nor Ricco were able to swim. Melissa, Ricco’s mother, testified via deposition that she had spoken with Ricco on occasion about staying away from bodies of water because of his inability to swim. Courtney testified via deposition that they sat in the shallow end of the pool for a while before Ricco decided to walk toward the deep end of the pool. Courtney stated Ricco was holding on to the side of the pool as he walked into deeper water. Courtney said he did not see the depth markers indicating three, six, and nine feet, but he later admitted he was leaning against the three-foot depth marker.
¶ 3. Courtney stated when Ricco reached the six foot section of the pool, Ricco’s head remained above water due to his height. According to Courtney, Ricco held on to the side of the pool as Ricco walked back and forth from the shallow end to the deeper end of the pool. At one point Ricco submerged his head, lost his grip on the edge of the pool, drifted away from the side of the pool, and ultimately drowned. Several bystanders tried to help pull Ricco from the pool and perform CPR, but no one was able to save Ricco. Courtney ran to Craig’s apartment to notify Craig and to call emergency services.
¶ 4. A sign posted in the pool area stated that there was no lifeguard on duty and that tenants must accompany their guests while in the pool area. Ruby Heard, the complex manager, testified that although there was no floating safety rope in the pool, there was a place on the sides of the pool to attach a safety rope. Heard, who was in charge of maintaining the swimming pool, also stated the bottom of the pool begins to slant down toward the deeper end at the six-foot depth marker.
STANDARD OF REVIEW
¶ 5. In reviewing a lower court’s grant of summary judgment, this Court employs a de novo standard of review. Anglado v. Leaf River Forest Prods., 716 So.2d 543, 547 (¶ 13) (Miss.1998). Summary judgment “shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). This Court will consider all of the evidence before the lower court in the light most favorable to the non-moving party. Palmer v. Anderson Infirmary Benevolent Ass’n, 656 So.2d 790, 794 (Miss.1995). The party opposing the motion “may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.” M.R.C.P. 56(e).
DISCUSSION
¶ 6. On appeal, Melissa contends the trial court erred in granting summary judgment in favor of Nejam. In support of her theory of negligence, Handy offered the affidavit of Dr. Thomas Ebro, an aquatic safety specialist. Dr. Ebro opined Nejam breached his duty to Ricco by failing to provide certain pool equipment, including a floating safety rope.
¶ 7. In order to prevail under her theory of negligence, Handy was required to prove duty, a breach of that duty, causation, and damages. Steele v. Inn of Vicksburg, 697 So.2d 373, 377 (Miss.1997). “An invitee is a person who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage.” Lucas v. Miss. Housing Auth. No. 8, 441 *629 So.2d 101, 103 (Miss.1983). Here, Ricco entered the premises as Craig’s guest; therefore, Ricco is presumed to be an invitee under the law. As such, Nejam owed Ricco “the duty to keep the premises reasonably safe and[,] when not reasonably safe[,] to warn only where there is hidden danger or peril that is not [in] plain and open view.” Little ex rel. Little v. Bell, 719 So.2d 757, 760 (¶ 16) (Miss.1998) (citing Caruso v. Picayune Pizza Hut, Inc., 598 So.2d 770, 773 (Miss.1992)). Moreover, “[t]he risk of drowning in a pool is obvious.” Howze v. Garner, 928 So.2d 900, 904 (¶ 17) (Miss.Ct.App.2005).
¶ 8. In regard to a breach of duty, Handy contends the pool was unreasonably dangerous because it did not have a floating safety rope, depth markers, a bottom stripe on the pool indicating increasing depth, and an emergency telephone near the pool. We note that photographs of the pool taken shortly after Ricco’s drowning indicate the presence of depth markers. Courtney also indicated he saw the depth markers on the side of the pool. The evidence produced showed the following: the water was clean and clear; there were depth markers; Heard routinely inspected the pool and surrounding area; a sign indicated the lack of a lifeguard; and this sign also warned swimmers to swim at their own risk. Although Dr. Ebro opined that the lack of the aforementioned safety features was “more probably than not” the proximate cause of Ricco’s death, the trial court determined this was pure speculation. The trial court found the evidence reflected that Ricco would have entered the deep end of the pool regardless of any additional safety features. We agree with the trial court’s findings. Melissa also contended Nejam had a duty to equip the pool with these safety features. However, Handy has offered no law to support this contention. From the evidence produced, we find Nejam did not breach his duty to keep the pool reasonably safe.
¶9. Were we to find that Nejam failed to keep the premises reasonably safe, there is no evidence Nejam failed to warn of a hidden danger or peril that was not in plain and open view. In Howze, this Court noted that the pool owner’s “failure to provide flotation devices, hire certified lifeguards, install a life-line, or read brochures pertaining to pool safety does not constitute a breach of [the owner’s] duty to warn of hidden perils.” Howze, 928 So.2d at 904 (¶ 17). Furthermore, we reiterate that the risk of drowning in a pool is obvious, and Ricco knew of this risk since his mother, Melissa, had warned him to stay away from bodies of water.
¶ 10. Melissa has not met her burden of proving the pool was not reasonably safe; mere speculation cannot be considered a genuine issue of material fact in order to defeat a summary-judgment motion. Thus, we affirm the trial court’s grant of summary judgment in favor of Nejam.
¶11. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
GRIFFIS, P.J., BARNES, ISHEE, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR. IRVING, P.J., AND ROBERTS, J„ CONCUR IN PART AND IN THE RESULT.

. The record and transcripts incorrectly state Nejam's name as "Nejam A. Waddell." This error, although pointed out by Nejam in his answer, was never corrected.